UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

**CRIMINAL ACTION NO. 17-CR-00030-DRC**

**UNITED STATES OF AMERICA**                                                       **PLAINTIFF**

**V.**                  **SENTENCING MEMORANDUM AND**
**MOTION FOR A DEPARTURE AND/OR**
**VARIANCE UNDER 18 U.S.C. § 3553(a)**

**GENE PAUL PENDYGRAFT**                                        **DEFENDANT**

**\*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\***

The Defendant, Gene Pendygraft, by counsel, respectfully moves the Court for a departure and/or variance from the applicable guideline range, for the reasons set forth below. Defendant further submits this Sentencing Memorandum for the purposes of assisting the Court in fashioning a sentence under 18 U.S.C. § 3553(a) that is "sufficient but not greater than necessary to comply with the purposes" of § 3553.

### I. INTRODUCTION

In imposing an appropriate sentence, the Guidelines are the "starting point and the initial benchmark. The Guidelines are not the only consideration, however." Gall v. United States, 552 U.S. 38, 49 (2007). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a) "to determine whether they support the sentence requested by a party. In so doing, [the Court] may not presume that the Guidelines range is reasonable," and must "make an individualized assessment based on the facts presented." Id. at 49-50 (internal citations omitted). The Court must also consider whether a variance is warranted in order to comply with the Guideline's

mandate that the sentence be "sufficient, but not greater than necessary, to comply with the purposes" of sentencing set forth in 18 U.S.C. § 3553(a)(2).  See United States v. Keller, 498 F.3d 316, 323 (6th Cir. 2007).

The Defendant pled guilty to Count One of the Indictment, charging him with Receipt of Visual Depictions Using a Means and Facility of Interstate Commerce Involving the Use of a Minor Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2252(a)(2). Defendant's applicable advisory guideline range is 292 to 365 months.  However, for the reasons discussed below, the Defendant respectfully submits that a sentence of imprisonment of the mandatory statutory minimum of 180 months fulfills the sentencing objectives of 18 U.S.C. § 3553(a).  Furthermore, the Defendant should be credited for time served on his conviction of Felon in Possession of a Handgun in Boyle Circuit Court and the remainder of his undischarged sentence for this offense should run concurrently to the sentence imposed by this Court.[1]

## II.  GUIDELINE CALCULATIONS

Based on the PSR prepared by the United States Probation Office, the base offense level is 22 (PSR ¶ 11).  Five Specific Offense Characteristics were applied, increasing his offense level by 17 points.  (PSR ¶ 12-16).  He was credited three points for acceptance of responsibility, bringing him to a total offense level of 36.  (PSR ¶ 22-23).  With a Criminal History Category of V, his guideline imprisonment range is 292 to 365 months.

## III.  DISCUSSION OF § 3553 FACTORS AND REQUEST FOR A VARIANCE FROM THE GUIDELINE RANGE

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to

---

[1] See Record No. 40, Defendant's Memorandum in Support of Objections to the Presentence Report.

2

ensue." Koon v. United States, 518 U.S. 81, 113 (1996). After an individualized assessment of the case, the court must therefore determine whether to apply any (1) departures from the guidelines or (2) variances pursuant 18 U.S.C. § 3553(a). Post-Booker, this Court has "greater latitude" to sentence outside the guideline range, and may conclude that a lower sentence would still comply with and serve the mandates of section 3553(a). See United States v. Collington, 461 F.3d 805 (6th Cir. 2006). Indeed, "*all* of the sentencing guidelines are advisory." United States v. Michael, 576 F.3d 323, 327 (6th Cir. 2009) (quoting United States v. Liddell, 543 F.3d 877, 884 (7th Cir. 2008)).

**A.    The History and Characteristics of the Defendant, Section 3553(a)(1)**

The Defendant, Gene Paul Pendygraft, is a 46 year old white male, currently before the Court for sentencing on a conviction for violation of 18 U.S.C. § 2252(a)(2).

Mr. Pendygraft was born in Lexington, Kentucky in 1972 and had a troubled and turbulent childhood. Defendant resided in Colorado and Texas as a child until being moved to Danville, Kentucky at the age of 8, after his parents divorced. Mr. Pendygraft described living with his father as a "parental kidnapping". (See, Record No. 31, Psychological Evaluation p. 2). His father, who was apparently alcoholic, was physically abusive to the Defendant and his brother. He has not spoken to his father in years, but maintains a good relationship with his mother. (PSR, ¶ 35).

Defendant had a head injury at the age of 6 when he fell through a glass table and had significant trouble in school, being held back several times. Additionally, he dropped out of school when he was in the 10th grade. (PSR, ¶ 40). Subsequently, he obtained his GED.

Defendant has a life-long history of depression, anxiety disorder, and social isolation. The forensic report prepared for this Court, dated March 13, 2018, documents the Defendant's

difficulties in school, his mental health issues, and his diagnosis with significant mental health illness. (Record No. 31).

The psychologist who examined Mr. Pendygraft concluded that the Defendant had a diagnosis of: (1) major depressive disorder, recurrent, moderate; (2) social anxiety disorder (social phobia); and (3) pedophilic disorder. These mental health problems have contributed to his previous violation of child pornography laws, as well as his current predicament.

In June 1991, Defendant was married to Kimberly Sparrow, who was his wife for 22 years. The couple divorced in 2013. This divorce was devastating to the Defendant. The couple had 2 children, Amber Pendygraft, age 20, and Zachary Pendygraft, age 13. Amber is currently enrolled in Eastern Kentucky University, and Zachary is a student residing with his mother in Junction City, Kentucky. (PSR ¶ 36).

After the divorce from his wife, Defendant was forced to live in an out-building behind his wife's residence. He rarely left the confines of that hubble and became increasingly suicidal. The physiological examination performed in this case refers extensively to this issue. Indeed, Pendygraft was placed on suicide watch on February 15, 2018 while at FMC Fort Worth based on suicidal ideation. (Psychological Examination Report, p. 4). The report documents the following:

> Inmate PENDYGRAFT reported that prior to his incarceration he never left his home because he was fearful of outsiders and others. He reported his ex-wife would bring him groceries so would not have to leave. He stated during the same period he experienced sadness, low self-worth, and hopelessness. He reported these symptoms having persisted throughout his current incarceration resulting in him isolating himself to his cell interacting with few other inmates…
>
> Inmate PENDYGRAFT reported that he has had passive suicidal ideation for the past 2 years. He reported that prior to his arrest he had concluded that he would complete suicide by shooting himself with a .22 rifle. He stated he drank all the alcohol he had in his home and began watching some movies he wanted to

4

> watch before he died. He reported that before he could finish his movie, law enforcement had arrived to arrest him for his current charges.

(Psychological Examination Report, p. 5).

In short, Defendant currently has, and had at the time of the commission of this offense, significant mental health issues that have contributed to his conduct herein.

The Defendant's criminal history is not extensive but revolves around related crimes. Defendant was convicted in 2001 for possession of child pornography in the United States District Court in Lexington. (PSR, ¶ 26). He received a sentence of 27 months imprisonment and 3 years of supervised release. Subsequently, Defendant had several convictions for violations of sex registry issues in 2013 and 2014. (PSR, pp. 27, 28). He received criminal history points for both those convictions. Finally, Defendant has a conviction for possession of a firearm that is "relevant conduct" to the instant charges. (PSR, ¶ 29).

The Defendant's criminal history is devoid of violence, actual contact or sexual offenses against children, or serious narcotics issues. It is also important to note that the Defendant does not appear to have significant drug or alcohol abuse issues, although obviously he is in need of mental health treatment. Ultimately, the picture that emerges is a depressed, suicidal, thoroughly troubled man who fell apart after his divorce in 2013. Although he was able to stay away from child pornography for almost 13 years, that demon reemerged in 2016 leading to his present predicament.

**B.    The Nature and Circumstances of the Offense, Section 3553(a)(1)**

As noted in the previous section, and as set forth in paragraphs 3-6 of the PSR, Defendant was essentially involved in possessing and viewing child pornography. Obviously, such charges are serious, and require punishment for the Defendant consistent with the objectives of 18 U.S.C. § 3553(a).

Counsel notes that because this is Defendant's second conviction for possession of child pornography, he is subject to a mandatory minimum sentence of 15 years imprisonment pursuant to 18 U.S.C. § 2252(b)(1).

**C.**     **A Variance from the Recommended Term of Imprisonment is Appropriate**

Mr. Pendygraft requests the Court look beyond the guidelines and to show leniency by sentencing him below the guidelines range for three reasons. First, judges throughout the country have recognized that the section of the United States Sentencing Guidelines Manual applicable to Mr. Pendygraft's case, § 2G2.2, is flawed and excessively harsh. A below-guidelines sentence is appropriate for the policy reasons and discussed herein and is consistent with the variances being granted in the majority of federal child pornography cases. For example, in the Second Quarter of 2017, approximately 60% of individuals subject to the provisions of § 2G2.2 received below-guideline sentences. A variance here is necessary to avoid an unwarranted sentencing disparity as reflected in 18 U.S.C. § 3553(a)(6).

Second, a variance is warranted because the ten (10) criminal history points assigned in the PSR overstates his criminal history and fails to account for the circumstances of his prior convictions. Third, the Defendant requests that the Court consider a variance in this case based upon his childhood brain injury, documented mental health issues, and diagnosed disorders. For the reasons explained below, a sentence in this case substantially below the advisory guideline range would be "sufficient, but not greater than necessary" to fulfill the goals of sentencing established by Congress. 18 U.S.C. § 3553(a).

**1.**     **Section § 2G2.2 of the Guidelines Do Not Properly Reflect the Sentencing Goals Set Forth in 18 U.S.C. § 3553(a)**

A key component of Supreme Court law, designed to ensure that the guidelines are truly advisory and constitutional, is the authority of this Court to disagree with a guideline as a matter

6

of policy. Because "the Guidelines are now advisory . . . , as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." Kimbrough v. United States, 552 U.S. 85, 101-02 (2007) (internal quotations omitted) (citing Rita v. United States, 551 U.S. 338, 351 (2007) (district courts may find that the "Guidelines sentence itself fails properly to reflect § 3553(a) considerations"). As the Supreme Court held in Kimbrough, because "the cocaine Guidelines, like all other Guidelines, are advisory only," it "would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." 552 U.S. at 91, 109-10.

Congressionally directed guidelines are just as advisory as any other guideline and therefore equally subject to policy-based variances. See United States v. Michael, 576 F.3d 323, 327 (6th Cir. 2009) (recognizing that "*all* of the sentencing guidelines are advisory," including those directed by Congress) (emphasis in original, citations omitted). This Court may properly find that the child pornography guideline was not developed by the Commission in its characteristic institutional role of basing its determinations on empirical data and national experience. See, e.g., United States v. Grober, 624 F.3d 592, 600-01 (3rd Cir. 2010) (applying abuse of discretion review to a district court's policy-based downward variance from § 2G2.2 because "the Commission did not do what 'an exercise of its characteristic institutional role' required—develop §2G2.2 based on research and study rather than reacting to changes adopted or directed by Congress"); id. at 608-09 ("Congress, of course. . . may enact directives to the Commission which the Commission is obliged to implement," but "Kimbrough permits district courts to vary even where a guideline provision is a direct reflection of a congressional

7

directive").[2] When a guideline was not developed by the Commission based on empirical data of past sentencing practices and national sentencing experience, as is the case here, it is not likely that the guideline "reflect[s] a rough approximation of sentences that might achieve § 3553(a)'s objectives," and therefore a policy-based variance from such a guideline is "not suspect." See Kimbrough, 552 U.S. at 109-10; Spears v. United States, 555 U.S. 261, 264 (2009); Rita, 551 U.S. at 348, 349-50.

  a.  **2012 Sentencing Commission Report**

In December 2012, the Sentencing Commission published a report on the child pornography guidelines for non-production offenders. See U.S. Sent'g Comm'n, Report to the Congress: Federal Child Pornography Offenses (2012). The Commission explained that it compiled the report in large part due to the increasing rate of below-guideline sentences for offenders sentenced under USSG § 2G2.2, pursuant to its statutory duty to "consider whether the guidelines are in need of revision in light of feedback from judges as reflected in their sentencing decisions," id. at ii, and that because "changes in the computer and Internet technologies that typical non-production offenders use, the existing sentencing scheme in non-production cases no

---

[2] See also United States v. Dorvee, 616 F.3d 174, 188 (2d Cir. 2010) (Kimbrough's holding that "it was not an abuse of discretion" for a district court to disagree with the crack guidelines "because those particular Guidelines 'do not exemplify the Commission's exercise of its characteristic institutional role' . . . applies with full force to § 2G2.2."); United States v. Henderson, 649 F.3d 955, 959-60 (9th Cir. 2011) ("[T]he child pornography Guidelines were not developed in a manner 'exemplify[ing] the [Sentencing] Commission's exercise of its characteristic institutional role,' . . . so district judges must enjoy the same liberty to depart from them based on reasonable policy disagreement as they do from the crack-cocaine Guidelines discussed in Kimbrough."); United States v. Stone, 575 F.3d 83, 89-90 (1st Cir. 2009) ("[O]ur precedent has interpreted Kimbrough as supplying this power even where a guideline provision is a direct reflection of a congressional directive," including the career offender, fast-track, and child pornography guidelines); id. at 93-94, 97 (district court may choose to agree with Congress's policy decisions as long as it recognizes its authority not to, but the "guidelines at issue are in our judgment harsher than necessary" and "we would have used our Kimbrough power to impose a somewhat lower sentence"); United States v. Regan, 627 F.3d 1348, 1353-54 (10th Cir. 2010) (defendant's argument for a policy-based variance from § 2G2.2 was "quite forceful" but he "did not raise the argument that the Guidelines are entitled to less deference because they are not the result of empirical study by the Commission").

longer adequately distinguishes among offenders based on their degrees of culpability." Id. at ii; 323.

The Commission pointed out that because the enhancements for computer use and type and volume of images "now apply to most offenders," the guideline "fail[s] to differentiate among offenders in terms of their culpability." Id. at iii, xi; id. at 209, 323. It explained that "technological changes have resulted in exponential increases in the volume and ready accessibility of child pornography, including many graphic sexual images involving very young victims, a genre of child pornography that previously was not widely circulated." Id. at 6. It concluded that because "sentencing enhancements that originally were intended to provide additional proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders," id. at xi, the "current guideline does not adequately distinguish among offenders regarding their culpability for their collecting behaviors," id. at 323. The cumulative enhancements addressing the content and volume of images possessed, "in addition to base offense levels of 18 or 22, result[] in guideline ranges that are overly severe for some offenders in view of the nature of their collecting behavior." Id.

In describing the varying degrees of culpability, the Commission reported that the "typical" child pornography case now involves images depicting "prepubescent children engaging in sexually explicit conduct." Id. at 84. The variety of images readily available on the Internet and found in offenders' possession ranges from "legal but sexually suggestive poses" to extremely graphic images "depicting violence, humiliation, bondage, and bestiality." Id. at 80-81, 90-91. Offenders "vary widely in their technological sophistication," with some relatively unsophisticated offenders using widely available peer-to-peer networks, like Lime Wire, to receive or distribute material "in an indiscriminate manner," while others "use their

9

technological expertise to create private and secure trading 'communities' and to evade, and help others evade, detection by law enforcement." Id. at viii, 61-62.

The Commission also reported that some offenders have "non-sexual motivations for viewing child pornography," including "avoidance of stress or dissatisfaction with life." Id. at 79. It noted that recent studies show that "appropriate 'treatment interventions . . . are associated with lower rates of recidivism—some of them very significant.'" Id. at 278 & n. 31. The Commission pointed out that "not all child pornography offenders are pedophiles or engage in other sex offending." Id. at 104. Approximately one in three offenders sentenced under § 2G2.2 "have engaged in" what the Commission deems "sexually dangerous behavior," criminal or non-criminal, past or present, based on allegations in PSRs, arrests, and convictions. Id. at ix-x, 204-05. However, "the current guideline measures for offender culpability (e.g., for distribution of child pornography, number of images possessed, possession of sado-masochistic images) are generally not associated with significantly higher rates of [criminal sexually dangerous behavior]." Id. at 204.

The Commission concluded that "[t]he current sentencing scheme in §2G2.2 places a disproportionate emphasis on outdated measures of culpability regarding offenders' collecting behavior and insufficient emphases on offenders' community involvement and sexual dangerousness." Id. at xx; see also id. at 321. The Commission asked Congress to enact legislation to provide it authority to amend the guidelines that "were promulgated pursuant to specific congressional directives or legislation directly amending the guidelines." Id. at xviii, 322. The Commission recommended that the specific offense characteristics related to the types and volume of images, distribution, and use of a computer "be updated to account more meaningfully for the current spectrum of offense behavior regarding the nature of images, the

10

volume of images, and other aspects of an offender's collecting behavior reflecting his culpability (e.g., the extent to which an offender catalogued his child pornography collection by topics such as age, gender, or type of sexual activity depicted; the duration of an offender's collecting behavior; the number of unique, as opposed to duplicate, images possessed by an offender)," and "to reflect offenders' use of modern computer and Internet technologies." Id. at xviii-xix, 322-23.  This has not yet occurred.

### b. Most Offenders Sentenced Under Section 2G2.2 Received Below-Guidelines Sentences

Although the Guidelines have not yet been revised to addressing these concerns, judges are consistently sentencing defendants convicted of child pornography to sentences well-below the Guidelines range.  The most recent statistics from the United States Sentencing Commission applicable to possession and receipt of child pornography, those from October 1, 2017 through March 31, 2018, show that there were 679 individuals sentenced pursuant to USSG § 2G2.2 in the Second Quarter of 2018.  See Second Quarter Data Report, p. 16.[3]  Of those individuals, 425 (62.6%) were granted a variance and given a below-guidelines sentence.  Only 192 defendants (28.3%) were sentenced within the applicable guidelines range.  Id.  For child pornography convictions, the average (mean) sentence was 151 months, while the median sentence was 97 months.  See Data Report, p. 9.

Judge M. Casey Rodgers, Chief United States District Court Judge for the Northern District of Florida, testified before the United States Sentencing Commission in February of 2012 regarding this issue.  She explained that she and the other judges of the Northern District of Florida "most often" concluded that the recommended guideline range was consistent with the

---

[3] Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/quarterly-sentencing-updates/USSC_Quarter_Report_2nd_18_Final.pdf

factors set out in 18 U.S.C. § 3553(a). See Statement of Chief United States District Judge M. Casey Rodgers before the United States Sentencing Commission (Feb. 15, 2012) 1-2.[4] However, that was "not the case in the area of child pornography offenses," she explained, noting that many district court judges are "increasingly imposing below-guideline sentences based on a concern over the integrity and reliability of [the child pornography] guidelines." Id. at 3.

After providing the Commission with a history of the development of the applicable guideline, Judge Rodgers addressed what many see as the central flaw: that "the cumulative effect over time from Congress's directives, direct amendments, and the enactment of a mandatory minimum for receipt, coupled with the Commission's efforts to comply with those directives" has been "ever increasing sentences. . . that ferries the ordinary offender to the high end of the statutory sentencing range." Id. at 7. Having reviewed sentencing in the Northern District between 2006 and 2011, Judge Rodgers recognized that the offense characteristics that resulted in higher sentences were found in nearly every case:

> For the vast majority of the possession and receipt offenders in our district, the offense characteristics involving the use of a computer; material depicting a child under twelve, material depicting sadistic, masochistic or violent conduct; and material involving over 600 images were all present. Over 90% merited an increase for the use of a computer; 100% of receipt offenders met the offense characteristic of material depicting a minor under age 12; and over 80% received a 5-level increase for conduct involving more than 600 images, with the numbers of images easily reaching into the thousands. In fact, only 4 out a total of 26 possession offenders from 2006 through 2011 had fewer than 600 images. Also, our district's figures show that the offense characteristic of material depicting sadistic, masochistic or violent conduct applied in 87% of receipt cases and 61% of possession cases.

---

[4]Judge Rodgers' testimony is available on the United States Sentencing Commission's website at: http://www.ussc.gov/Legislative_and_Public_Affairs/Public_Hearings_and_Meetings/20120215-16/Agenda_15.htm

<u>Id</u>. at 7-8. Because the various offense characteristics apply so broadly, the guideline, in the view of Judge Rodgers, fails to identify conduct that, in cases of possession or receipt, increases the harm of the offense:

> Thus, although they [the offense characteristics] effectively further Congress's intent to increase punishment, they are ineffective in distinguishing conduct that proportionately increases harm in the possession or receipt context. This results in sentences that are disproportionate to the offense severity. The stark absence of offenders whose guideline range calculates at the low end of the statutory range is a strong indication that the "heartland" characteristics are over-evaluated in this guideline.

<u>Id</u>. at 10.

### c. A Below-Guidelines Sentence is Appropriate Here Based on Policy Considerations

Mr. Pendygraft's case does not present circumstances outside of the typical child pornography facts seen in other cases. He used a computer, traded images, and possessed at least 300 images. However, all of the purposes of sentencing point in the same direction. Mr. Pendygraft's offense is less serious than the offenses Congress had in mind, and he is not the dangerous offender Congress envisioned. His recommended guidelines range of 292 to 365 months is far above the current average sentence of 151 months. Mr. Pendygraft therefore requests that the Court grant a variance and sentence him to 15 years, the mandatory minimum in this case. This substantial sentence would be "sufficient, but not greater than necessary" to fulfill the goals of sentencing established by Congress. 18 U.S.C. § 3553(a).

### 2. Mr. Pendygraft's Criminal History Category Results in an Unreasonable Sentencing Increase/Disparity

Mr. Pendygraft's criminal history category overstates his culpability. Mr. Pendygraft was convicted of possession of child pornography in 2001, more than fifteen years ago, for which he was given 3 criminal history points. (PSR ¶ 26). However, he was also assessed four (4)

criminal history points for failing to follow requirements for convicted sex offenders, based upon this 2001 conviction. In August 2013, he was convicted of being a Registrant Prohibited from Using Social Network Website for his use of Facebook, for which he has been assigned two criminal history points. (PSR ¶ 27). In August 2014, he also failed to change his home address in the sex offender registry, resulting in a conviction for Failure to Comply with the Sex Offender Registry in 2014, for which he was assigned another two criminal history points. (PSR ¶ 28). Mr. Pendygraft acknowledges his responsibility for these non-compliance violations. However, he does not believe that the facts underlying his non-compliance – signing up for a Facebook account and failing to change his home address – warrant an additional four criminal history points, which increases the maximum of his guidelines range by 72 months.[5]

Furthermore, Mr. Pendygraft was assigned three criminal history points for his conviction for being a Felon in Possession of a Handgun. (PSR ¶ 29). On November 29, 2016, Mr. Pendygraft was found in possession of this handgun in the same location, on the same day, of the violation of 18 U.S.C. § 2252. The U.S. Attorneys' Office elected not to pick that charge up in connection with his federal indictment on child pornography violations. This resulted in a *separate* three-year state court sentence, in addition to an increase of three criminal history points. If these charges had been brought together, as they normally are, Mr. Pendygraft would have seven (7) criminal history points instead of ten (10); and if the four (4) points for the sex registry non-compliance violations are deducted, Mr. Pendygraft would have only three (3) criminal history points. This would put him in criminal history category II, resulting in a recommended guideline imprisonment range of 210 to 262 months.

---

[5] Without these additional 4 points, the recommended guideline imprisonment range would be 235 to 293 months, instead of 292 to 365 months recommended in the PSR.

14

The guideline imprisonment range of 292 to 365 months recommended in the PSR is more than double the current average sentence of 151 months (and median sentence of 97 months. See Data Report, p. 9. This Court must consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Whether any difference among sentences is warranted or unwarranted depends on the individual circumstances of each case and their relationship to the purposes of sentencing. "Unwarranted disparity is defined as different treatment of *individual* offenders who are similar in relevant ways, or similar treatment of *individual* offenders who differ in characteristics that are relevant to the purposes of sentencing." U.S. Sent'g Comm'n, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System Is Achieving the Goals of Sentencing Reform* 113 (2004).

As discussed above, the guideline calculation gives heavy weight to factors based on assumptions about the seriousness of the offense and general deterrence that are unfounded in general and particularly in this case. In this case, a substantial variance is necessary to avoid unwarranted uniformity between Mr. Pendygraft and dissimilar defendants who committed dissimilar conduct. See Gall, 552 U.S. at 55 (in imposing a sentence of probation, district court appropriately "avoid[ed] unwarranted similarities").

### 3. The Defendant's Mental Health Issues/Diminished Capacity Justify a Variance

As noted above, and documented in the psychological evaluation performed by the BOP herein (Record No. 31), Defendant Pendygraft has a long history of depression, anxiety, and suicidal tendencies. He had a brain injury as a child (though there is no record of the severity of that injury).

During the period of time this offense was committed, Defendant was living like a hermit in an out-building behind his wife's house, rarely ventured outside, was unemployed and on the verge of committing suicide. (See, Psychological Evaluation, pp. 9-10). He was, in short, psychologically impaired or, at a minimum, suffering from diminished capacity.

Accordingly, a variance from the applicable guideline range is justified on this basis.

**D.     A Sentence of 15 years is Sufficient, But Not Greater than Necessary, to Comply with the Purposes of 18 U.S.C. § 3553(a)**

As detailed below, the sentence proposed by the Defendant is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing set forth in 18 U.S.C. § 3553(a)(2).

**1.     The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense, Section 3553(a)(2)(A)**

"[A] sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." Gall, 552 U.S. at 54. The Defendant is proposing a sentence of imprisonment of 180 months, which is sufficient to promote respect for the law and will constitute a just punishment under the circumstances. See e.g., United States v. Grossman, 513 F.3d 592 (6th Cir. 2008) (affirming a downward variance from 120 months in prison to 66 months with 10 years supervised release, and observing that the sentencing court "accounted for § 3553(a)'s concerns that the sentence protect society and deter future criminal conduct," but that "it opted to pursue those goals, not through a longer term of imprisonment, but through extensive counseling and treatment and an extensive period of supervised release").

Congress' actions with respect to the child pornography guideline have stemmed in large part from the belief that those who view child pornography are actually child molesters. See, e.g,

16

137 Cong. Rec. S10323 (July 18, 1991) (Senator Helms) (in support of directing increase to base offense level from 10 to 13). Under this view, punishing child pornography possessors serves as a proxy for punishing child sexual abusers. Aside from the lack of evidence to support this belief in general, see 2012 Report at 104 (confirming that "not all child pornography offenders are pedophiles or engage in other sex offending"), Mr. Pendygraft has not been convicted of sexually abusing a child, has not in fact sexually abused a child, and there is no evidence that he is at risk of harming a child. This distinguishes him from the offenders Congress had in mind and is therefore highly relevant. See United States v. Marshall, 870 F. Supp. 2d 489, 491-92 (N.D. Ohio 2012) (rejecting presumption that "those who view child pornography are indistinguishable from those who actually abuse children," finding instead that the "[e]mpirical data strongly suggests that viewing child pornography does not equate to child molestation"); United States v. Grober, 595 F. Supp. 2d 382, 404 (D.N.J. 2008) ("[T]he Court cannot make [Defendant] a surrogate for the monsters who prey on child victims through actual contact."), *aff'd* 624 F.3d 592 (3d Cir. 2010).

In addition, technology has changed the nature of this offense. In the past, child pornography had to be obtained in a risky and secretive manner for substantial sums of money, whereas today, images of child pornography are available for free in the privacy of one's home, with no planning and minimal effort. As a result, less dangerous people commit this offense than was previously the case, even though the guideline range is much higher than it was previously.

One of the goals of the Sentencing Reform Act was to provide for proportionality in punishment among offenses of different seriousness. S. Rep. No. 98-225, at 45-46 (1983). The child pornography guideline fails that goal, as several courts have noted. See, e.g., United States v. Dorvee, 616 F.3d 174, 187 (2010); United States v. Beiermann, 599 F. Supp. 2d 1087, 1106 (N.D. Iowa 2009). A defendant who used a computer to entice a 12-year-old to engage in illegal

17

sexual activity, but was caught before actually having sex with the child, would receive an offense level of 30, see § 2G1.3(a)(3), (b)(3), six levels *below* Defendant's offense level of 36 under § 2G2.2. Mr. Pendygraft recognizes the great harm inflicted on the victims depicted in these images. However, he submits that a 15-year sentence and is a sufficient sentence under the facts of this this case.

### 2. The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct, Section 3553(a)(2)(B)

From the perspective of general deterrence, a sentence below the guideline range will not encourage criminal behavior. There is no evidence "remotely supporting the notion that harsher punishment would reduce the flow of child pornography on the Internet." Beiermann, 599 F. Supp. 2d at 1103; id. at 1103-04 ("[W]e cannot sentence Internet users and sharers of child pornography fast enough or long enough to make a dent in the availability of such material on the Internet," and while deterrence is a "laudable" goal, it "is not being achieved according to any empirical or other evidence in this case or, for that matter, empirical evidence in any other case or source that I am aware of."). The Commission acknowledges that there is no social science research supporting the theory that criminal punishments "have affected commercial or non-commercial 'markets' since the advent of the Internet and P2P file-sharing." 2012 Data Report at 98.

### D. The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct, Section 3553(a)(6)

As explained above, sentencing Mr. Pendygraft below the guideline range will not create an "unwarranted" disparity among defendants found guilty of similar conduct, because a most defendants sentenced under Section 2G2.2 receive a below-Guidelines sentence. "Congress [through the Sentencing Guidelines] . . . sought to eliminate only 'unwarranted' disparities, while

18

enabling judges to consider those factors that cannot be tallied in advance, but that may create 'warranted' disparities in sentencing." United States v. Jaber, 362 F.Supp.2d 365, 373 (D. Mass. 2005).

## IV.  CONCLUSION

For the foregoing reasons, Defendant Pendygraft respectfully requests this Court to sentence him to a term of 180 months.  This imprisonment term is sufficient, but not greater than necessary, to fulfill the sentencing objectives of 18 U.S.C. § 3553(a).

Respectfully submitted,

/s/ Thomas C. Lyons
THOMAS C. LYONS, ESQ.
Law Offices of Thomas C. Lyons
201 West Short Street, Suite 800
Lexington, Kentucky 40507
859-231-0055
thomaslyons@hotmail.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing has been served on July 21, 2018 by filing same via the CM/ECF System, which will send electronic notice to all counsel of record.

/s/ Thomas C. Lyons
THOMAS C. LYONS, ESQ.